All right, our third case for this morning is United States v. Barber. Mr. Stewart. Good morning, and may it please the Court. Mike Stewart for Defendant Appellant Michael Barber. Mr. Barber raised a number of issues on appeal. With my time this morning, I want to focus on his Sixth Amendment challenge to his conviction for theft from a federally licensed firearm dealer. And as context for this argument, the necessary element to prove theft from a federally licensed firearm dealer is that the firearms dealer in question was, in fact, federally licensed at the time of the theft. Now, the way the government proved that in this case violated Melendez-Diaz, and this error was not harmless in context. So I begin by briefly explaining the confrontation issue here, and then I can turn to harmless error. Now, as to the confrontation clause violation, Melendez-Diaz covers precisely the certifications such as those prepared to prove the firearms dealer here was federally licensed. So what if the person had just said, I've searched the records, and here's what I found, and didn't say anything about something still being valid, not being valid, just these pieces of paper sit there in the file, as the government argues, for regulatory purposes, for purposes that would seem to be non-testimonial? Your Honor, that would still be covered under Melendez-Diaz, and I want to draw a careful distinction to Exhibit 43B, which is at Appendix A3 of Mr. Barber's original brief. There's four pages there. The first two are the statements that we're stating are testimonial. The second two are the governmental records. And so those are the ones that require the foundation prepared by the first two statements. So we'll concede that those second two pages of records are not testimonial under Crawford and Melendez-Diaz. But on those first two statements, there's simply no exception in Melendez-Diaz for statements such as those. Now, we're aware this court, according to the government, has spoken twice on that issue, but the first of those cases cited predates Melendez-Diaz by three years. That's Ellis. And the second one, Vetrano, postdates Melendez-Diaz, but expressedly states it's not considering this issue. Now, to be sure, in Melendez-Diaz, the majority spoke to the fact that a traditional common law exception may have been found for clerk certificates authenticating a document. It doesn't say that that exception survives Crawford and Melendez-Diaz or is incorporated under the Sixth Amendment. So at best, that's still an open issue. But I think, in fact, the remainder of the opinion makes clear that they're simply not covered there. Was the issue of licensing status actually disputed at trial? I would not say it was. I'm going to take that in two parts. The first being Mr. Barber didn't put on evidence to contradict licensing status, but at the same time, it's a necessary element of the government's case. Right. And the dealer testified that he was licensed, right? Yeah. I think that takes us to harmless error, Judge Hamilton. It does. Yes. So let me read the dealer's testimony because I think it's important. What the government needed to ask and get from the dealer is, was the Dutchman's license on July 10, 2017, which is the date of the theft? That simple question was never asked. Instead, what the government asked, and I'll read from the transcript at 177, the license, the copy that you brought, this is a license that's been held for a number of years, answer yes. Question, and approximately for how long have you held a federal firearms license for Dutchman? Answer, since 2006. And do you periodically renew that? Answer, it's every three years or four. Three years, I think it is. Now, we're not raising a sufficiency challenge to that. Certainly, that would be sufficient to sustain a conviction. The question is whether it's harmless. And this is a situation where you have good evidence and weaker evidence. And once you get rid of the good evidence that was brought in in violation of the Confrontations Clause, you're left with the weak evidence. But why is that? What other inference could there be from that exchange that you just read than the inference the government wants, which is, yes, I've had this license since 2006, and there haven't been any gaps. That's what you're trying to say, that those words don't actually spell out, that there was not a gap on July 10, 2017. Chief Judge, again, the inference is there. We're not disputing that. I think the question is, on the one hand, the government didn't think that was enough on its own because it brought in 43B and it wanted that second insurance. And there are any number of reasons why an individual over the course of 2006 to 2018 could forget a lapse or indeed have reason not to admit to a note lapse. And against this evidence, what was offered? Nothing. There was nothing offered against this evidence. So didn't the owner bring in his own copy of the license? Yes, Your Honor. So that's at 43A, which is in the government's appendix. But if you look at that copy of the license, it doesn't actually state a beginning date or any date prior to the date of trial. The only dates on there are the expiration date, November 1, 2018, and the first date of trial, May 7, 2018, when he signed it. So, in fact, that copy of the license itself doesn't go to his existence on February 10, 2017. But taken with his testimony, one would have a couple of pieces of evidence saying he's saying I've always been licensed and, yes, here's my license now. Yeah, you do have, I mean, you need his testimony to get there. Okay, which we have. Yes, I agree. His testimony is there. But to establish the fact, you do need his testimony. But, you know, against that, again, the government wasn't sure it was up to ensure conviction. And I think a reasonable juror could well, in a case requiring a federal license, expect to see the federal license and not be convinced beyond a reasonable doubt unless it sees the federal license. So you think under Melendez-Diaz, Kimberly Rowland had to be called? Would that have done it? I do believe, yes, Ms. Rowland had to be called. That's correct. Okay. And, I mean, if you look at her statement, it goes beyond simply saying, in fact, what it never says is the records that follow are true and correct copies of what's maintained in ATF's records. What her statement says is I certify that Dutchman, giving the address, was licensed as a dealer in firearms and was licensed with the Bureau of ATF during the period October 1, 2016, through May 3, 2018. So that statement, in fact, interprets the documents under Melendez-Diaz, bringing it even further afield from any exception that might exist. One final point I'll make on the harmlessness, too, is these records did come in under that authentication by Ms. Rowland. And, you know, there's elements of them that aren't exactly pellucid and are in her statement that aren't necessarily reflected on the face of the document. Specifically, the October 1, 2016 date doesn't appear anywhere on the record. So there'd be ample reason to cross-examine on where she's pulling that date from or why that matters and when else, you know, interim dates may have mattered in this circumstance. But she also, she is the one that they're using to bring in these two documents, especially the second one that has add date, 10-13-2016, change dates, all these other dates that would bracket the date of the theft. Yeah, so that's the, I mean, again, I do think her testimony is necessary. She could bring those in and explain them. But, you know, items like change date, which are the date of trial, aren't explained on the record here. Easily a juror could want to hear about what those mean. Okay. One more piece to the harmless error point is, you know, I point the court to the 11th Circuit's recent decision from January in United States Against Monks Card. This was an FDIC insurance requirement case. It was a two-to-one split panel on a sufficiency review. And what the court had there, what the evidence of trial was, a certificate indicating that the institution was assured in 1990, which was over 20 years before trial, testimony from an employee that was currently FDIC insured, and testimony from the employee that it was not required to periodically renew. With just those three, which pretty well mirror what we have here, the court found it was barely sufficient, let alone harmless error, to get it through. And that was, in fact, a split panel on that decision. So I think if you're looking not at sufficiency but harmless error, it makes it pretty clear a reasonable juror could want something more here. What was the name of that case again? That is United States Against Monks Card, M-U-N-K-S-G-A-R-D. And that's this year's from the 11th Circuit. Thank you. If there are no further questions on the confrontation issue, I'm happy to reserve the balance of my time. Okay. That sounds fine. Mr. Whalen. May it please the Court. Good morning, Your Honors. McCain and Whalen here on behalf of the United States of America. I guess I should skip right to the confrontation clause issue. Mr. Barber has conceded that the third and fourth pages of this exhibit are admissible. He's conceded that the owner's testimony is sufficient to sustain a conviction. And so I don't know that there's a whole lot more that this Court needs to really look at. To the extent that there was any error in admitting the affidavits, it's harmless. To Judge Hamilton's point, this was not a contested issue. It wasn't argued in opening. It wasn't argued in closing. There was no contrary evidence. And, you know, the 2006 date that Jerry Hochstetler testifies to about when he obtained the license is important because that's when the Huntsman opens. And so what he's telling the jury is, we've had the license since we've opened in 2006. But he did object to the admission of these documents. That's correct, Your Honor. He objected to the admission of what he called the blue ribbon certificate. Right, right. But as I understand it, he's conceded on appeal that pages three and four of that exhibit are non-testimony. If they've been properly authenticated. I mean, he's not saying they're in right. Well, I don't know that he's ever made an objection that they weren't properly authenticated. That objection was never made. The objection was that they violated the confrontation. But they couldn't come in. I mean, what he's saying is they couldn't come in under Melendez-Diaz without Rowland being present to say, this is what I did and this is what these things mean. She'd be subject to cross-examination on the contents. That's what I understood the argument to be. I understand it to be a slightly different point, which is that these documents are. I mean, what's the point of contesting anything? If you're saying these documents are in, I don't know that there's too much left to talk about. Well, I guess I don't understand the point of contesting really the affidavits at this point, given he's never disputed that the underlying, or he's not disputed that the underlying documents should have come in at this point. Maybe I'm misinterpreting the argument. I thought the challenge was primarily to the affidavit. I mean, that's, and frankly, the affidavit sure looks testimonial to me under Melendez-Diaz in saying the Dutchman was licensed with ATF during the period October 1, 2016 through May 3, 2018. That sounds testimonial to me. But maybe I'm wrong about that. Well, Your Honor, I think. Could we just pause on that? I mean, because under, Melendez-Diaz made a lot of things testimonial that people had thought were not testimonial, and the government had argued strongly against that result. So after Melendez-Diaz, we have a different view of this. Why is this not testimonial? Well, Your Honor, Melendez-Diaz on page 323 says, a clerk could by affidavit authenticate or provide a copy of an otherwise admissible record. And so I think that's what, that reinforces what this court said in Ellis, which is the certificates of authentication are admissible. But she's doing more than that. She's saying that he's holding a valid license, and she gives a particular time period. That's not just saying, I'm the custodian of these documents. This was in the folder. I understand the court's point. And I think what she's saying is there's this subset of time that he has the license. And that's what the records show. Which is what we care about. That's what the government has to prove. That says, what she's saying is let me interpret these documents for you. And here's what they mean, and here's how they prove the element the government has to prove. Your Honor, I'd spin it slightly differently in saying she's not interpreting the documents. She's pulling out a sample size of what the documents otherwise show. It's like saying if the documents show the alphabet contains A through Z, the alphabet contains L, M, N, N. I understand the court's point. To the extent this court does have confrontation clause concerns, I do think the error is harmless. This is an undisputed point. Can I ask you a quick question about the cell site data in this case? Sure, Your Honor. What volume of information was collected by the government in this case? In particular, was it more or less than seven days worth? Your Honor, I think it, and I apologize, I don't know that right off the top of my head. We have this puzzle left about how far Carpenter reaches, don't we? Yeah. I don't know that answer off the top of my head, Your Honor. I'm sorry. I'd be happy to submit a letter letting the court know if the court's interested, but we haven't argued that this is outside the scope of Carpenter. Okay. And why not? Since Carpenter, by its term, says that it applies only to extended surveillance, and I looked at Barber's brief, and there's no contention that he was subject to extended surveillance. Yeah. So it looks like Carpenter is entirely irrelevant. Your Honor, I do think there are cases where Carpenter is going to be irrelevant. That's not the position that we've taken in this case. We have taken this court's decided to good faith basis argument. I always worry that somebody wants us to decide a constitutional issue based on some hypothetical, rather than on what actually happened. And there's no argument that the actual behavior comes within the scope of Carpenter. Your Honor, this court could certainly decide that issue. But you may have waived it. Could you send us a letter at least telling us if there's an answer to this in the record? I can. You know, there is a yes. Okay. Yes, I will send this court a letter. Without reaching the further point whether even if it is in the record, you've waived any points that you may. I will try to keep it simple and to the point. But it's okay since you're making an argument that the defendant has waived any argument based on who. I will try to keep it simple. We have multiple layers of waiver here. And we'll try to do justice as best we can in the case. Well, I think this court has already reached the issue that the good faith basis exception applies to any violation of Carpenter in the Fourth Amendment requirement. And we're just asking this court. Well, we didn't say any violation. But in this case, the Stored Communication Act was followed. And there was what we have in other cases called good faith compliance with what people understood the proper procedure to be. Mr. Whalen, can I ask you one other question? You don't have to answer this at all. But how did the defendant become a suspect in this theft? Do we know? Your Honor, I don't actually know the answer to that off the top of my head. I could speculate that it has something to do with his. Okay. Okay. With his posts? I will say that we admitted calls that he made from his jail while he's being detained on the Michigan. And there were references. Offering to sell stolen guns. Correct. He was asking his girlfriend to sell guns to pay for his legal fees. And he talks about them being Playstations. And so I would just be speculating. But I think that might have something to do with that. Unless this court has any questions on either the Facebook issue or the obstruction of justice issue, we would rest on our brief on those issues and ask that this court affirm the judgment below. Thank you. Thank you. Anything further, Mr. Stewart? Just briefly, Your Honor. First, I'll clarify. We are arguing that the business records should not have been admitted if this foundational evidence should not have been admitted. Since that was a confrontation violation, without that foundation, the following records should not be admitted as well. Second, I note that the fact that this wasn't disputed at trial isn't ultimately relevant to the government's burden to prove it at trial. And so whether it's harmless beyond a reasonable doubt turns on their ability to show it beyond a reasonable doubt, not whether Mr. Barber put in evidence. Finally, on the question of harmlessness, just quickly, again, one question from the government could have cleared this all up. Was the store licensed on February 10, 2017? The question was never asked. The government brought in, again, this more compelling evidence of licensure later. In closing, in fact, the government did point to both 43A and 43B as evidence for this facet. I believe that's 540 of the trial transcript, page 540. And I think that argument is actually fairly red to suggest that the only piece that certifies to the time period is 43B. At best, it would be confusing for the jury which one it was exactly relying on. And finally, of course, there's good reason for Mr. Hochstetler not to even understand that for some period he was in violation of federal requirements by not being licensed. If there's no further questions, I'll submit. No. And thank you. Thank you. You were appointed, I believe. Yes, Your Honor. We appreciate your help for the court. Stepping into a difficult situation, in fact. So thank you. Thank you very much, Mr. Stewart. The case will be taken under advisement. And thanks, of course, to Mr. Whalen to cover it.